Filed 7/15/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| REMEDIAL CONSTRUCTION SERVICES, LP,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>AECOM, INC., et al.,<br><br>  Defendants and Appellants. | 2d Civ. No. B303797<br>(Super. Ct. No. 19CV04505)<br>(Santa Barbara County)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br>(No Change in Judgment) |

THE COURT:

Appellants' petition for rehearing is denied. It is ordered that the opinion filed on June 15, 2021, be modified as follows:

On page 8, delete the following sentence in the second paragraph: "And since the Subcontract is governed by California law and is between two California-based companies working on a California construction project, it seems unlikely that RECON would willingly agree to waive dispute resolution in California in favor of arbitration in Texas."

No change in judgment.

GILBERT, P.J.          PERREN, J.          TANGEMAN, J.

Filed 6/15/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| REMEDIAL CONSTRUCTION SERVICES, LP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AECOM, INC., et al.,<br><br>    Defendants and Appellants. | 2d Civ. No. B303797<br>(Super. Ct. No. 19CV04505)<br>(Santa Barbara County) |

Respondent Remedial Construction Services, L.P. (RECON) sued appellants AECOM, Inc. and AECOM Technical Services, Inc. (collectively AECOM) for damages related to AECOM's alleged failure to properly manage the construction project on which RECON worked as one of AECOM's subcontractors.

AECOM moved to compel arbitration based on an arbitration clause contained in a separate contract (the Prime Agreement) between AECOM and the property owner, Shell Oil Products US LLC and Shell Pipeline Company (collectively "Shell" or "Owner"). The Subcontract between RECON and AECOM incorporates the 151-page Prime Agreement, excerpts of

which were marked as Exhibit M and attached as one of 37 exhibits to the Subcontract. The excerpts included the arbitration clause.[1] The trial court denied AECOM's motion, concluding that "[t]he Subcontract does not evidence an intention, clear or otherwise, for arbitration of disputes between RECON and AECOM."

In the absence of a clear agreement to submit a dispute to arbitration, we will not infer a waiver of a party's jury trial rights. (See *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*).) The Subcontract's incorporation of a voluminous contract containing an arbitration agreement between other parties was insufficient to subject RECON to arbitration of its claims against AECOM. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute involves the demolition, remediation and restoration of the Gaviota Terminal (Terminal) in Goleta, which is owned by the Gaviota Terminal Company (GTC). Shell has an ownership or leasehold interest in the Terminal and acted as GTC's authorized agent. GTC stopped using the Terminal in 2005.

In 2015, GTC commissioned a remedial action plan to address the presence of chemicals on the Terminal property. It retained AECOM to perform all design, engineering, procurement

---

[1] In response to our written query, AECOM's counsel confirmed at oral argument that the *excerpts* of the Prime Agreement included in the record on appeal were attached as Exhibit M to the Subcontract when it was executed. The entire Prime Agreement was not attached. In light of this representation, we deny as moot AECOM's motion to take evidence on appeal.

and construction work necessary to complete the Gaviota Terminal Decommissioning Project (the Project). Shell Oil Products US, LLC, as the "Company," and AECOM Technical Services, Inc., as the "Contractor," entered into the Prime Agreement for goods and services related to the Project. The Prime Agreement established a framework agreement by which separate scope-of-work purchase orders would be executed. The agreement is governed by Texas law and has a provision requiring arbitration in Houston, Texas, which is where Shell has its offices. That provision states: "Any dispute or claim, arising out of or in connection with the CONTRACT or its subject matter or formation, whether in tort, contract, under statute, or otherwise . . . will be finally and exclusively resolved by arbitration under the International Centre for Dispute Resolution ('ICDR') International Dispute Resolution Procedures (the 'Rules')."

AECOM subsequently issued a formal request for subcontractor proposals. RECON submitted a proposal with detailed pricing for more than 40 categories of work. RECON was awarded the contract (Subcontract No. 88741).

By 2019, RECON believed that AECOM's acts and omissions were causing unnecessary and costly delays in the Project. When AECOM declined to compensate RECON for additional expenses, RECON filed this action for damages.

AECOM moved to compel arbitration, arguing that because the Subcontract incorporated the Prime Agreement, the arbitration clause in that document requires arbitration of RECON's claims against AECOM. AECOM further maintained that Article 39.2 of the Subcontract requires arbitration because

3

RECON's claims were ones "for which the 'Owner . . . may be liable.'"

In denying AECOM's motion, the trial court found that RECON did not agree to arbitrate its disputes with AECOM in the Subcontract or to be bound by the obligation to arbitrate in the Prime Agreement. The court explained that "it is first, and most glaring, that there is no general arbitration clause in the Subcontract and the Subcontract does not directly incorporate an arbitration agreement from the Prime [Agreement]." The court further found that the proper interpretation of Article 39.2 of the Subcontract is that it applies only to claims against the Owner and not to claims between RECON and AECOM.

## DISCUSSION

### *Standard of Review*

"'[T]here is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]'" (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406; *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 655.) "Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning. [Citation.]" (*Avery, supra*, 218 Cal.App.4th at p. 60.)

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that a valid agreement to arbitrate exists. (*Pinnacle Museum Tower Assn. v.*

4

*Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1169.)

### *AECOM has Failed to Establish the Existence of an Agreement to Arbitrate RECON's Claims*

"Arbitration is . . . a matter of contract." (*Avery, supra*, 218 Cal.App.4th at p. 59.) "The policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate. Although the law favors contracts for arbitration of disputes between parties, there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate. *Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.*" (*Ibid.*, internal quotations and citations omitted, italics added; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804.)

"'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' [Citations.] 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' [Citations.]" (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195.) The contractual language must be construed in the context of the document as a whole and in the circumstances of the case. (*Ibid.*) We "give effect to all of a contract's terms, and . . . avoid interpretations that render any portion superfluous, void or inexplicable." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507 (*Brandwein*).)

"[T]he parties may incorporate by reference into their contract the terms of some other document. But each case must turn on its facts. For the terms of another document to be

5

incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54, internal quotations and citations omitted.)

AECOM concedes the Subcontract has no arbitration provision but argues that the Prime Agreement's arbitration clause was clearly incorporated into the Subcontract and is therefore binding upon RECON. Article 22 of the Subcontract states: "The contract between Contractor and [Owner] . . . is hereby incorporated into and made a part of this Agreement by reference. Subcontractor assumes toward Contractor all of the obligations and responsibilities contained in the Prime Agreement or client flow-down provisions . . . that Contractor assumes towards its Client as they relate to Subcontractor's performance of the Work. In the event of a conflict between any provision of this Agreement and the Prime Contract the more restrictive provision shall govern."

As RECON points out, it only assumed AECOM's obligations and responsibilities under the Prime Agreement to the extent they relate to RECON's performance of its work on the Project. There is no indication this would include RECON's assumption of AECOM and Shell's agreement to arbitrate their own disputes. It is not reasonable to conclude that an arbitration clause in a 151-page document would override the litigation forum selection provision in the text of the Subcontract itself. The right to select a judicial forum is a substantial and fundamental right "not lightly to be deemed waived." (*Chan v.*

*Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 643 (*Chan*).)

In addition, Article 19.2 of the Subcontract provides an "Order of Precedence" to resolve any "conflict, variation or inconsistency between any provisions of the Subcontract Documents." The parties and the court "shall" construe the documents in the following order: (1) Subcontract amendments, (2) Subcontract, (3) General Conditions, (4) drawings and (5) "specifications and other Subcontract Documents *including the Prime Agreement.*" (Italics added.) Thus, AECOM and RECON expressly agreed the terms of the Subcontract would control over the Prime Agreement.

But even if we assume the arbitration provision was incorporated into the Subcontract, it is inconsistent with Article 43.1 of the Subcontract, which states: "*Any litigation initiated by and between the Parties arising out of or relating to this Subcontract shall be conducted in the federal or state court of jurisdiction in the State whose laws govern this Subcontract and Contractor and Subcontractor each consents to the jurisdiction of such court.* In the event a dispute arises between the Contractor and Owner in connection with the Work or Subcontract, Contractor shall have the right to implead Subcontractor into the dispute resolution proceeding and Subcontractor hereby agrees to any such impleader." (Italics added.) Article 19.2 further provides that "[i]n the event of any conflict, variation or inconsistency between any provisions of the Subcontract Documents," which include the Prime Agreement, "the provision imposing the more or most stringent requirement as the case may be shall govern."

Thus, to the extent a conflict exists between the forum selection provisions in the Subcontract and the Prime Agreement, the more restrictive and stringent provision controls. AECOM does not dispute that the Prime Agreement, by authorizing arbitration, waives the contracting parties' constitutional right to a jury trial and limits their appellate rights. (See *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831 ["[P]rivate arbitration is a process in which parties voluntarily trade the safeguards and formalities of court litigation for an expeditious . . . means of resolving their dispute"].) Since the Subcontract upholds these rights by providing for litigation, its forum selection provision is the more restrictive and stringent and therefore controls the parties' dispute. (See *Chan, supra*, 178 Cal.App.3d at p. 643 ["[I]n case of doubt, the issue of contract interpretation should be resolved in favor of preserving [the jury trial] right"].)

Moreover, accepting AECOM's interpretation of the Subcontract would impermissibly render Article 43.1 "superfluous, void or inexplicable." (*Brandwein, supra*, 218 Cal.App.4th at p. 1507.) If the parties' intent was to arbitrate their disputes, as AECOM claims, there would have been no need to include a litigation provision in the Subcontract. And since the Subcontract is governed by California law and is between two California-based companies working on a California construction project, it seems unlikely that RECON would willingly agree to waive dispute resolution in California in favor of arbitration in Texas. As the trial court aptly stated, "[g]iven the sophistication of the parties and the subject of the contracts, if an arbitration agreement were intended to cover all claims arising from performance of the Subcontract or from the Project, it would have been expected that any arbitration clause – or clause

incorporating the arbitration clause of the Prime Agreement – would say so directly."

Indeed, Article 39.6 of the Subcontract specifically provides that "Force Majeure Events are defined as described in the Prime Contract." As the drafter of the Subcontract, AECOM had the ability to similarly reference the Prime Agreement's arbitration clause. Instead, it drafted a Subcontract consenting to judicial dispute resolution and application of California law. Thus, to the extent an ambiguity exists regarding whether AECOM and RECON intended to arbitrate their disputes, it should be construed against AECOM as "the party who caused the uncertainty to exist." (Civ. Code, § 1654; *Steller v. Sears, Roebuck & Co.* (2010) 189 Cal.App.4th 175, 183-184; see also *Levi Strauss & Co. v. Aetna Cas. & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486 ["The court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there"].)

Nor are we persuaded that Article 39.2 of the Subcontract entitles AECOM to arbitration. That provision concerns "Claims Relating to Owner" and requires RECON, as the Subcontractor, "to initiate all claims for which the Owner is or may be liable in the manner and within the time limits provided in the Subcontract Documents for like claims by the Contractor [AECOM] upon the Owner and in sufficient time for the Contractor to initiate such claims against the Owner in accordance with the Subcontract Documents."

AECOM contends that the phrase "claims in which an [O]wner 'may be liable'" broadly defines the scope of possible claims. RECON asserts that it applies only to claims against the

9

Owner and is inapplicable to claims against AECOM. We agree with the trial court that the "'is or may be liable' language is to provide a blanket statement regarding claims made against the [O]wner, whether those claims are meritorious or not, and not to include claims that are made against others unless the exception for joinder in [Article] 40.2 applies."

Article 40.2 states: "[I]n the event: a) Owner and Contractor [AECOM] become involved in any arbitration, mediation, litigation or other proceedings, and b) Contractor determines that it would be appropriate that disputes under this Subcontract be resolved in such dispute proceeding due to the existence of common issues of fact or law, Subcontractor shall consent to joinder to, and a consolidated resolution of issues in, that proceeding." This Article is an exception to the remaining contract language in that it expressly includes arbitration as a dispute resolution mechanism. If anything, it further confirms that if there was an intent to arbitrate claims arising between RECON and AECOM, the Subcontract would have so stated. The only agreement to arbitrate involving RECON is one in which it is joined as a party to an action between AECOM and the Owner.

We conclude AECOM has failed to show by a preponderance of the evidence that an enforceable arbitration agreement requires arbitration of its dispute with RECON. The trial court properly found that "the Subcontract consistently identifies arbitration only as a mechanism for dispute resolution . . . between AECOM and owners in which RECON would be appropriately impleaded as a party to that dispute. The Subcontract does not evidence an intention, clear or otherwise, for arbitration of disputes between RECON and AECOM." We are not convinced by AECOM's arguments to the contrary.

10

## DISPOSITION

The trial court's order denying AECOM's motion to compel arbitration and to stay litigation is affirmed. RECON shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

11

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Troutman Pepper Hamilton Sanders, Marion T. Hack, Luke N. Eaton; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Alana H. Rotter, Gary J. Wax; Aecom, Ivana Cingel, for Defendants and Appellants.

Munsch Hardt Kopf & Harr, Tiffany A. Harrod (pro hac vice); Mitchell Silberberg & Knupp, Stephen E. Foster, Andrew C. Spitser, for Plaintiff and Respondent.